**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IVAN QUINTANA,<br>CDCR #AM-7791,<br><br>                                  Plaintiff,<br><br>vs.<br><br>D. SANCHEZ, Correctional Officer;<br>BERMUDEZ, Correctional Officer;<br>MELGAR, Correctional Officer;<br>JIMENEZ, Nurse,<br><br>                                  Defendants. | Case No.:  25-cv-03771-AJB-DEB<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF PROCESS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)**<br><br>**(Doc. No. 2)** |

Plaintiff Ivan Quintana, proceeding *pro se* and while incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, filed a civil rights Complaint ("Compl.") pursuant to 42 U.S.C. § 1983 (Doc. No. 1), together with a Motion to Proceed *In Forma Pauperis* ("IFP") (Doc. No. 2), in the Eastern District of California on December 8, 2025. Because Quintana claims RJD correctional officers and a nurse used excessive force against them[1] and refused to provide emergency medical care after an

---

[1] Quintana uses the pronouns they/their when referring to themselves in the body of the Complaint, so the Court does the same. (*See* Compl. at 3.)

1

attempted overdose on September 28, 2024, United States Magistrate Judge Chi Soo Kim determined venue was proper in the Southern District of California and transferred the case here pursuant to 28 U.S.C. § 1406(a). (*See* Doc. No. 4 at 1–2.)

For the reasons explained, the Court **GRANTS** Quintana's motion to proceed IFP, screens the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), finds it alleges plausible Eighth Amendment claims against all named Defendants, and **DIRECTS** the United States Marshal to effect service of process pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3).

## I.    IFP MOTION

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, . . . an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Here, Quintana's IFP motion complies with both 28 U.S.C. § 1915(a)(1) and (2). Attached is a copy of Quintana's California Department of Corrections and Rehabilitation ("CDCR") Inmate Trust Account Statement Report, as well as a Prison Certificate authorized by a RJD accounting officer (Doc. No. 2). *See also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Quintana had an available balance of $90.86 at the time of filing, and the same average deposit and balance in the account over the 6-month period immediately preceding the filing of the Complaint. (*Id.* at 4, 5.)

Accordingly, the Court **GRANTS** Quintana's Motion to Proceed IFP (Doc. No. 2) and assesses an initial partial filing fee of $18.17 pursuant to 28 U.S.C. § 1915(b)(1). This initial fee will be collected only if sufficient funds are available in Quintana's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts

as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(b)

### A.   Standard of Review

Because Quintana is a prisoner and is proceeding IFP, their Complaint requires preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (citing 28 U.S.C. § 1915A(b)); *see also Hebrard v. Nofziger*, 90 F.4th 1000, 1006–07 (9th Cir. 2024) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). "The standard for dismissal for prisoner claims at screening is the 'same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.'" *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012)); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (Section 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).").

Federal Rule of Civil Procedure 8 prescribes "the information that a plaintiff must provide about the merits of his claim at the outset of litigation." *Berk v. Choy*, 607 U.S. ___, ___ S. Ct. ___, No. 24-440, 2026 WL 135974, at *4 (U.S. Jan. 20, 2026). Thus, Rules 8 and 12(b)(6) together require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.     Factual Allegations**

On September 28, 2024, Quintana alleges to have been evaluated in RJD's TTA[3] "for an overdose on pills." (Compl. at 1, 2, 4.) Quintana claims "poison control gave [an] order for Nurse Jimenez to administer liquid charc[oal] to counteract the side effects, but he refused." (*Id.*) Instead, Quintana claims to have been "dragged," "battered," and "removed" from the TTA with "deadly force." (*Id.* at 3, 4.)

Specifically, Quintana claims Correctional Officers Sanchez, Melgar, and Bermudez "wrap[p]ed a shirt around [Quintana's] neck," and "strangle[d] them while their legs were shackled." (*Id.* at 3.) Quintana further claims their glasses and cane were confiscated, and they could "barely walk without [their] DMEs,"[4] so they "ran after" two of the officers in an effort to "explain[.]" (*Id.*) When Quintana "tripped and fell," however, the officers "thought they were resisting," and "slammed [Quintana's] face to the concrete," beat them with closed fists in the head and ribs, and "separated [Quintana's] ear from [their] skull with a fully[-]extended metal . . . baton." (*Id.*)

Based on these events, Quintana now seeks $100,000 in damages based on alleged violations of their Eighth Amendment right to adequate medical care and to be free from excessive force. (*Id.* at 3, 4, 7.)

///

///

---

[3] TTA is an acronym for Triage and Treatment Area. It is "the prison's equivalent of the emergency room." *Arevalo v. Palacios*, No. 2:22-CV-00774-JDP PC, 2022 WL 17417626, at *1 (E.D. Cal. Dec. 5, 2022).

[4] Quintana does not explain, but the Court assumes, the cane and glasses they claim were confiscated were previously authorized for use as Durable Medical Equipment (DME) intended to accommodate some mobility impairment. *See* California Correctional Health Care Services (CCHCS), Health Care Operations Manual, *see* https://www.cdcr.ca.gov/hcdom/dom/chapter-3-health-care-operations/article-6-durable-medical-equipment-supplies-and-accommodations/3-6-1-durable-medical-equipment-and-medical-supply, Ch. 3, Art. 6, § 1(a) (providing that CCHCS "shall provide Durable Medical Equipment (DME) and medical supplies to California Department of Corrections and Rehabilitation (CDCR) patients at no charge and as medically necessary to ensure the patients have equal access to services, programs, or activities.") (last visited Feb. 26, 2026).

5

**C. 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035–36 (9th Cir. 2015). Here, all Defendants are alleged to be RJD correctional officials acting in both their individual and official capacities as employees of the CDCR at the time Quintana was injured.[5] *See Naffe*, 789 F.3d at 1036 (explaining that a state employee generally acts under color of state law when the employee "wrongs someone while acting in his official capacity or while exercising his responsibilities pursuant to state law.") (citation and internal quotation marks omitted). Therefore, the Court next considers whether Quintana has alleged facts sufficient to plausibly show a violation of his Eighth Amendment rights.

**1. Medical Care Claims**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Quintana to allege facts sufficient to show: (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974

---

[5] To the extent Quintana seeks damages for actions taken in Defendants' official capacity, as opposed to their individual capacities, however, those claims are dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity."). While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, it does not bar damage actions against state officials sued in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472–73 (9th Cir. 1992).

6

25-cv-03771-AJB-DEB

F.2d 1050, 1059–60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Quintana first alleges that they were being treated in the TTA for an "overdose on pills[.]" (Compl. at 4.) While Quintana fails to explain whether their September 28, 2024 overdose was intentional or negligent, "[a] heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 572 F.3d 1047, 1056 (9th Cir. 2009), *as amended*, 591 F.3d 1081 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *opinion reinstated in part*, 658 F.3d 897 (9th Cir. 2011); *see also Moore v. Dunlap*, No. 24-2704, 2026 WL 184223, at *1 (9th Cir. Jan. 23, 2026).

Moreover, prison officials act with deliberate indifference when they "intentionally interfer[e] with . . . treatment once prescribed." *Estelle,* 429 U.S. at 104–05. "[A]llegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference." *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999). Quintana alleges Jimenez refused to follow an "order" from "poison control" to counteract the side-effects of a potential drug overdose while being evaluated for emergent care in RJD's TTA. (*See* Compl. at 4.) Because deliberate indifference may be found where prison officials "intentionally interfere[e] with . . . treatment once prescribed," *Wakefield*, 177 F.3d at 1165 (internal citation and quotation omitted), or where prison officials are alleged to "deny, delay, or intentionally interfere with [a serious need for] medical treatment," *Hallet v. Morgan*, 296 F.3d 732, 734 (9th Cir. 2002), the Court finds Quintana's Eighth Amendment inadequate medical care allegations involving Nurse Jimenez sufficient to survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

///

///

### 2.     Excessive Force Claims

With respect to the Eighth Amendment excessive force claims alleged against Correctional Officers Sanchez, Melgar, and Bermudez, the Court also finds Quintana's allegations sufficient to sufficient to survive initial screening. *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

The Eighth Amendment forbids "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation omitted). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). Factors relevant to this inquiry include: "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley*, 475 U.S. at 1085). The sadistic and malicious use of force to cause harm violates the Eighth Amendment regardless of "whether or not significant injury is evident." *Id.* at 9–10.

Here, Quintana alleges to be mobility impaired, and to have been forcibly "dragged" from the TTA by Officers Sanchez, Bermudez, and Melgar after having "over dose[d] on pills." (*See* Compl. at 3, 4.) Quintana claims all three officers strangled them with a shirt while their legs were shackled, slammed their face to the concrete, and beat them with closed fists and a metal-tipped baton with enough force to separate their ear from their skull. (*Id.* at 3.) None of the circumstances described in the Complaint plausibly suggest a need to apply such force against a mobility-impaired prisoner alleged to be under the influence of a drug overdose just after being treated in the prison's infirmary. *See Hudson*, 503 U.S. at 7. Instead, assuming Quintana's allegations as true, and considering the extent of physical injury sustained, the Court finds them sufficient to plausibly suggest Sanchez, Bermudez, and Melgar's use of force on September 28, 2024, was excessive under the

circumstances. *See Iqbal*, 556 U.S. at 678; *see also Hudson*, 503 U.S. at 7 (noting that "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation.") (quoting *Whitley*, 475 U.S. at 321); *Kendall v. Galindo*, No. 23-CV-02709-HSG, 2023 WL 4372700, at *2 (N.D. Cal. July 6, 2023) (finding allegations that correctional officers "yanked" the arms and shoulders of a non-resistant prisoner already cuffed from behind, "dragged" him across the floor, and then "slamm[ed] him face-first into the ground" after he requested to speak to a supervisor sufficient to state a cognizable Eighth Amendment claim of excessive force).

Thus, because the Court finds both Quintana's Eighth Amendment inadequate medical care and excessive force allegations against Defendants Jimenez, Sanchez, Melgar, and Bermudez are "sufficient to warrant . . . an answer," *Wilhelm*, 680 F.3d at 1123, it will direct U.S. Marshal service on his behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

## III. CONCLUSION

For the reasons discussed, the Court:

1)   **GRANTS** Quintana's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

2)   **ORDERS** the Secretary of the CDCR, or his designee, to collect from Quintana's trust account the $18.17 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in their account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

///

9

25-cv-03771-AJB-DEB

3)       **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4)       **DIRECTS** the Clerk to issue a summons as to Quintana's Complaint (Doc. No. 1) and forward it to them along with blank U.S. Marshal Form 285s for Defendants D. SANCHEZ, BERMUDEZ, MELGAR, and JIMENEZ. In addition, the Clerk will provide Quintana with a certified copy of this Order, certified copies of the Complaint, and the summons so that they may serve these Defendants. Upon receipt of this "IFP Package," Quintana must complete the Form 285s as completely and accurately as possible, *include a physical address where Defendants Sanchez, Bermudez, Melgar, and Jimenez may be found and/or subject to service*, and return all these documents *to the United States Marshal* at the address provided by the Clerk and according to the instructions provided in the letter accompanying the IFP package.

5)       **ORDERS** the U.S. Marshal, upon receipt of these documents from Quintana, to serve a copy of the Complaint and summons upon Defendants D. SANCHEZ, BERMUDEZ, MELGAR, and JIMENEZ at the addresses provided by Quintana on the USM Form 285s, and to file executed waivers of personal service upon these Defendants with the Clerk of Court as soon as possible after their return. Should Defendants fail to return the U.S. Marshal's requests for waiver of personal service within 90 days, the U.S. Marshal must instead timely file the completed Form USM 285 Process Receipt and Returns with the Clerk of Court, include the date the summons, Complaint, and requests for waiver were provided to each Defendant, and indicate why service was not completed. All costs of service will be advanced by the United States; however, if any Defendant located within the United States fails without good cause to sign and return the waivers requested by the Marshal on Quintana's behalf, the Court will impose upon that Defendant any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(d)(2).

///

10

6) **ORDERS** Defendants D. SANCHEZ, BERMUDEZ, MELGAR, and JIMENEZ, once served, to reply to Quintana's Complaint, *and any subsequent pleading Quintana may file in this matter in which they are named as parties*, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face of the pleading alone that the plaintiff has a "reasonable opportunity to prevail on the merits," defendants are required to respond); and

7) **ORDERS** Quintana, after service has been completed by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Quintana must include with every original document they seek to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon these Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated:  February 27, 2026

Hon. Anthony J. Battaglia
United States District Judge

11

25-cv-03771-AJB-DEB